IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __1:22-cv-03110-GPG__
(To be supplied by the court)

__Naser Abdo__, Plaintiff

v.

__United States__,

_____,

_____,

_____, Defendant(s).

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
DEC 27 2022
JEFFREY P. COLWELL
CLERK

(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)

## PRISONER COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.

1

2

A. **PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Naser Abdo, 30887780, US Penitentiary Max PO Box 8500, Florence, CO, 81726
(Name, prisoner identification number, and complete mailing address)

Jason Abdo
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
____ Convicted and sentenced state prisoner
__X__ Convicted and sentenced federal prisoner
____ Other: (*Please explain*) _____


B. **DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1. United States, US Attorney General, 10th & Constitution,
(Name, job title, and complete mailing address)

Main Justice Bldg., RM 5W, NW Washington, DC, 20530

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ____ No (*check one*). Briefly explain:

_____

_____

N/A
Defendant 1 is being sued in his/her ____ individual and/or ____ official capacity.

Defendant 2: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

**C.   JURISDICTION**

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___   42 U.S.C. § 1983 (state, county, and municipal defendants)

___   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

_X_   Other: (*please identify*) 28 USC §1346 (b)(1) ; The FTCA

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    See Attachment Pages

Supporting facts:

5

## D. STATEMENT OF CLAIMS

Claim One: Battery Against U.S.; Assault Against U.S.
Claim Two: Intentional Infliction Of Emotional Distress Against U.S. [hereinafter IIED]

### FACTS

1. At all relevant times in this Complaint I was a prisoner at USP Max, PO Box 8500, Florence, CO, 81226, i.e., the 'ADX'.
2. On 6-25-21 I was on the 35th day of my hunger strike.
3. Medical staff came to my cell, C-501, to discuss a medical assessment they needed to conduct.
4. The staff were upset over other issues & began cursing in irate fashion at me, threatening me.
5. Medical staff shouted, "don't fuck with my department or i'll fuck with you!" and upon leaving the cell shouted, "don't be a bitch, take the gas!"
6. I did not reciprocate, I remained calm explaining that i'd comply with the assessment.
7. The "gas" is a reference to a non-lethal munition used during a 'use of force' by staff pursuant to BOP Policy 5566.06.
8. Inmates who are on a hunger strike & refuse to comply with medical assessments must be forced via a 'use of force' team. See BOP Policy Hunger Strike 5562.05 (referring to 'use of force' policy).
9. Medical staff, therefore, were trying to instigate a 'use of force' situation by not allowing me to comply & attempting to incite my emotions. Medical staff were trying to get me gassed & hurt me.
10. Sometime later, the 'team' arrives & I cooperate with them & submit to restraints.
11. When brought to the medical area I see the same nurse from earlier & refuse to cooperate with him, i.e., I refuse medical care.
12. At no time did I violate policy.
13. At no time did I become violent, physically aggressive or make any sudden movements.
14. At no time did I kick.
15. Lt. Batson asked me to provide a wieght and I refuse.
16. Lt. Batson ordered staff, "place Abdo on the scale!"

6

17. After Lt. Batson witnessed my refusal of medical care and an indeterminate pause, perhaps 15-30 seconds, he ordered the 'team' to "place Abdo on the ground."

18. At this time, i'm in full ambulatory black-box restraints with shackles and 2-3 officers holding me.

19. The 'team' then slam me to the ground & raise my legs up as if to hog-tie me by crunching up my lower body into a 'pain-position'. My face is crushed into the ground, while what felt like several knees and limbs grind into my back and body.

20. The officers continue to ratchet my legs & ankles untill it feels like they are trying to break my ankles by forcing them beyond their joints' ranges of motion.

21. The immovable black-boxed cuffs refuse to allow the cuffs to adjust; thus, the several officers' pressure & crushing wieght on my back and body, plus my own, are all brought to bear on the cuff's edges as my muscles, ligaments, necves and bones are forced to give way to the metal being pressed down from above into an unforgiving floor.

22. All of this cause searing, burning and non-specific pain all over my body, but specifically grating & severe at my wrists, hands, back and ankles. Further, the humiliation of being treated like an animal and having my face crushed against the dirty ground upset me if for no other reason than that the force was entirely gratuitous.

23. The danger of easily sustainable cuff injuries is apparent as the BOP regulates the issue forbidding persons from being carried or dragged by the handcuffs or restraints. See BOP Policy Use Of Force 5566.06 at (6)(e).

24. Lt. Batson asks, "Abdo, will you comply with the team and give a wieght?"

25. Humiliated & upset at this point I shout loud enough for the camera to hear, "no, nor am I going to provide a urine sample, the nurse should have done his job this morning," i.e., the medical assessment.

26. I continue to refuse cooperation with the nurse untill the assessment ends, including not reporting any pain or injuries.

27. I know that the nurse will not accurately record, report or treat any of my injuries or pain so I remain silent.

28. Several hours later another nurse, Ms. Dunn, examines my wrist & arms using a flashlight in the dimness of my cell.

29. She provides me 2 packets of anti-biotic oil for the abrasions & cuts

6

7

on my forearms and wrists.

30. The 'use of force' leaves searing fire in my wrists and hands for several days, along with numbness, all of which came & went becoming excited with movements, except the numbness, which was consistent.

31. Later, staff gave me a fabricated incident report for assaulting staff saying I "kicked" them.

32. The video will show I never "kicked", rather that the 'team' followed orders and reacted to the Lt's commands, not any movement or kick on my part.

33. Had I become aggressive or kicked staff at any time, staff would have immediately immobilized me as opposed to waiting for a Lt.'s order.

34. Had I kicked staff, the Lt. and staff would have ordered me to stop resisting or stop my aggressive behavior.

35. The video will show that after I was battered & assaulted, Lt. Batson asked me to "give a weight" & said nothing about being assaultive or kicking staff. This is because force was used to intimidate me into giving a weight, not due to any kick.

36. The video will show my body as very still revealing no "kick" at all.

37. When I didn't 'take the bait' earlier that morning by getting gassed, staff sought to better & humiliate me by fabricating a kick so they could use force. Had I resisted this battery, they would have been further pleased to batter me even more seriously.

38. Staff use these common tactics often; they accuse inmates of kicking to justify battery.

39. Several incident reports of me "kicking" staff have been expunged in the past, while one other was the subject of a successful suit against the tortfeasors.

40. In other words, i've never been credibly accussed of kicking staff before & the instant incident report is an outlier.

41. The video of ADX's C-Unit, L-Lower range cameras should be preserved from 4pm-8pm the day of 6-25-21.

## LAW APPLIED

42. The "intentional tort of battery require[s] a subjective desire... to inflict a harmful or offensive contact on another..." White v. Muniz, 999 P.2d 814 (Colo. 2000); accord Polanco v. Roth, LEXIS 703 (D. Colo.

7

(...2014).

43. In Colorado Law, "maliciousness is satisfied upon a showing the injury was inflicted without just cause or excuse." Polanco v. Roth, 2014 Bankr. LEXIS 703 (D. Colo. Feb. 21, 2014).

44. Defendant's violation of BOP Policy shows malice and the lack of "cause or excuse." Id.

45. Defendant violated 28 CFR § 552.22 because they used force "to punish an inmate." Cf. supra ¶37 ("staff sought to batter and humiliate me by fabricating a kick so they could use force."), ¶31 (staff "fabricated incident report").

46. Defendant violated 28 CFR § 552.22(c) because they used "more force than necessary to gain control of the inmate." Cf. supra ¶¶12-22 ("gratuitous" force used on fully restrained inmate who was not aggressive).

47. Defendant violated BOP Policy 5566.06(1) (staff "may not use ... physical violence or intimidation toward inmates."). Cf. supra ¶¶ 4,5, 9 (staff threaten, curse & incite me to get gassed), ¶¶12-22 (force used for punishment).

48. This Court should hold that acts sufficient to infer malice under the Eighth Amendments Excessive Force standard are sufficient to meet battery's subject intent requirement. Compare Bozeman v. Orum, 422 F.3d 1265, 71 n.11 (11th Cir. 2005) (threats can help in "the determination of the officer's subjective state."), and Mann v. Falley, 578 F. App'x 267, 72 (4th Cir. 2014) (same), with supra ¶47 (arguments on threats of staff). Compare also Giron v. Corr. Corp. of Am., 191 F.3d 1281, 90 (10th Cir. 1999) ("Where there is no legitimate penological interest ... the conduct itself is sufficient evidence ... [of] malice."), with supra ¶¶45-47 (stating arguments on various policy violations proving no penological interests existed).

49. Forcing handcuffed prisoners to floor and kneeing them in the back states a battery claim. McCollum v. United States, 2014 U.S. Dist. LEXIS 25173 (D. Colo. Feb. 26, 2014).

50. "[C]onduct, otherwise permissable, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other, or the power to affect the other's interests." Zalnis v. Thoroughbred Datsun Car. Co., 645 P.2d 292, 94 (Colo. App. 1982).

51. Here, Defendant is my custodian and I was fully restrained. Supra ¶¶1,18.

52. Also, Defendant wrote me a fabricated incident report which subjects inmates to a list of sanctions. See supra ¶31 ("fabricated an incident report"); see generally BOP Policy Inmate Discipline Program.

## D. STATEMENT OF CLAIMS

Claim Three: Battery Of U.S. &
Claim Four: IIED Of U.S.        &   Claim Five:
                                    Negligent Performance Of Duty

### FACTS

53. On 7-2-21, I was on the 42 day of my hunger strike.
54. By the time this battery occurred, I had been in full restraints, either ambulatory or 'four point', for 60 hours.
55. In addition to my hunger strike, I was refusing to come out of restraints, as a common form of protest among prisoners, so that I could raise my issues with prison administrators. Hunger striking, tho, is not common at all.
56. Over the 60 hours I refused to come out of restraints, "untill I speak with someone from the OIG or the regional office," about ADX's worsening conditions and services, especially post-covid.
57. On 7-2-21, my hunger strike's extended nature had already caused medical staff to move me to the prison's medical unit for close observation.
58. I'd lost about 40-50 pounds and was about 130 pounds at this time.
59. During this incident, there were 2 stationary cell cameras and a single handheld camera recording.
60. On 7-2-21, 6pm, I am 'four-pointed' in the medical cell; each limb was chained to a bar on each corner of the concrete slate slab.
61. At 6pm, the camera man Lt. Ingram, supervisor Lt. Kammrad, and officers Balsick, Quezada and Law arrive to put me into ambulatory restraints.
62. After 60 hours in restraints, my wrists were in very bad shape. The black-box is of a nature to force the cuffs to be into varying degree's of non-stop contact with the wrists, applying varying degrees of pressure. By 6pm, my wrists were swollen and lacerated and I am in constant pain due to the cuff's continued 'cutting into' my wrists. However, I do my best to cope to effectuate my protest.
63. Lt. Kammrad, sees my wrist inflammation, but applies the black-box restraints entirely to tight violating restraint application policies on spacing.
64. The cuffs are grating into my wrists at several different points, the Lt., Mr. Kammrad had actually tightened the cuffs, while re-applying them.
65. Lt. Kammrad refuses my request to loosen the cuffs.
66. Lt. Kammrad had already intentionally misapplied my restraints over the

10

past 12 hours resulting in deliberate arduous torture & suffering. See infra ¶¶ 111-135.

67. Lt. Kamrad was then, and during the instant claim, trying to cause me extreme pain & suffering by misapplying restraints to 'force' me to willingly come out of restraints.

68. Federal regulation states, "handcuffs may not be used.... [a]s a method of punishing an inmate." 28 CFR § 552.22.

69. Not only did Lt. Kamrad have a 'history' of misconduct over the past 12 hours, but Officer Balsick had already beaten me before & been the defendant in a successful suit.

70. Officer Balsick has a long history of using 'force' on inmates and is widely seen as one of ADX's most violent & corrupt staff.

71. Due to all of the above, when Lt. Kamrad tightens the restraints even further, I clearly understand that they are trying to bring me undue torture & agony.

72. While still fully restrained at hands and legs by mechanical restraints, and under the prospect of several hours of excruciating pain, I begin to non-combatively resist the medical assessment by moving my hunched-over upper body to the right & left. I was in a seated position, hunched over and fully restrained.

73. I was forced to do this so staff would put me back in 'four-point' restraints, which would have been much less torturous & painful. In other words, the cuffs were so painful that I chose that its better to be immobilized for hours chained to a bed than in ambulatory restraints.

74. At no time did I strike staff nor attempt to strike staff.

75. After one or two seconds, even tho my head was already restrained, Balsick grabs my throat & drags me by it over the bed.

76. It is clear from the cameras that I, by then, had stopped all movement.

77. Balsick digs his fingers & knuckles deep into my throat & crushes my 'adams apple' as he leans over onto it.

78. He releases for an instant and then continues choking me.

79. As he does this, Law is holding my legs and Quezada is holding the black-boxed handcuffed hands/wrists high into the air ratcheting them toward the ground threatening to break my wrists and cause permanent damage; because the black-box acts as a 'fulcrum' to grind the cuffs deeply into tissue, ligament and bone, it forces the wrists far beyond the joints range of motion when ratcheted & jerked. The black-box

11

is not made to be moved or allow the hands to be moved.

80. All of this causes me to scream "bloody murder" throughout the battery, from the choking, crushing of my trachea or 'adam's apple' and the attempt to break my wrists.

81. The entire time, I'm not moving.

82. Seeing this, Lt. Kammrad walks over to staff and tapping one of them on the shoulder say's, "control yourself," or "ease up."

83. Staff cease the battery & all goes quite.

84. I ask the camera to look at my neck & wrists but the Lt. will not order the camera man to take a view of my body.

85. The nurse only did a superficial 3 second 'exam' and then leaves.

86. The nurse did not record my injuries and was under-pressure to minimize staff caused injuries & pains.

87. Under 28 CFR § 552.26 (b), after applying restraints and using force, the nurse was required to examine, identify and treat any injuries.

88. A 3 second 'once over' doesnt qualify.

89. At this point, staff leave and my 'adam's apple' is dislodged, so I struggle to reach my head right and my hand left to push it back in place. This takes a while. I eventually am able to move it back from right of center.

90. For the next 10 days or so, I have trouble swallowing. Every time I did it felt like I swallowed an edged rock.

91. My right rib felt cracked b/c at certain slight movements, it sent sharp immobilizing pain through my right side & neck.

92. My neck ligaments elicited Pain trying to adjust the right wrist within the cuff.

93. The officers, again, misapplied the restraints by cuffing my right wrist so tightly that it gripped it like a vice grip, practically immovable.

94. Over the next few hours I struggle and scream as I try to twist my right wrist out of the cuff's vice grip, all while exciting my rib & neck pain.

95. At 8pm, Lt. Ingram returns with an officer, nurse and camera to do a 'restraint check', which is a mandatory 2 hour check to assess restraints, circulation and welfare. See generally, BOP Policy Use Of Force 5566.06 (10)(d), (e) (citing 28 CFR § 552.24 (d)(e)) (explaining types of 'restraint checks').

96. Nurse Dunn notes the vice-grip nature of the right cuff & even with the cuff opened by the Lt., has to apply immense pressure for several seconds in order to pull my wrist out of it.

97. As the cuff had been in constant contact with my bones, unmoved for

two hours, crushing veins, muscles and ligaments, I scream when they are removed. Immediate relief follows from the worst of the wrist pain.

98. The rib pain ends after a few hours.
99. I was later given a fabricated incident report for kicking staff in order to justify the battery of staff.
100. The incident report is later expunged & i'm found not guilty.
101. Thus, the U.S. is guilty of Battery & IIED for these acts.
102. Because the U.S. misapplied the restraints, it is guilty of Negligent Performance Of Duty and/or IIED.

## LAW APPLIED

103. I incorporate my legal arguments for Battery and IIED, supra ¶¶ 42-50. The application to these facts are obvious and will go unstated for brevity's sake.
104. The U.S. has a duty to prisoners. Kikumura v. Osagie, 461 F.3d 1269 (applying Colorado's Lamun and Solano tests to determine existence of duty). See generally, Taco Bell, Inc. v. Lannon, 744 P.2d 43 (Colo. 1987).
105. Moreover, there is "clearly a 'special relationship' between [plaintiff] and the correctional officers since, as a federal inmate, [he] is dependant upon and under the control of ADX prison and its staff...." Kikumura, 461 F.3d at 1301 (interpreting Colorado law and 18 USC § 4042(a)(2)). See also Wallin v. Hill, 2005 US Dist. LEXIS 43509 (D. Colo. Aug. 10, 2005) (collecting cases on duty, "a jailer incurs a reasonable duty to exercise reasonable care in protecting inmates' health and safety.").
106. The U.S. had a duty to apply the restraints properly or to notice that the restraints were vice gripping my wrist. See Clark v. Bunnell, 470 P.2d 42, 45 (Colo. 1970) ("[I]t is one's duty to see that which is plainly visable.").
107. "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person..., is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Jefferson Cnty. School Dist. v. Justus, 725 P.2d 767, 69 (Colo. 1986) (quoting Restatement (2d) of Torts, §323).
108. Because he, [    ] the U.S., "failed to exercise such [due] care", I suffered extreme pain for two hours in my wrist. See supra ¶¶ 93-97. Lastly, due to the facts present here, that I was fully restrained, supra ¶¶ 93-95, and the legal existence of a 'special relationship', its clear I relied on the U.S. and I

13

suffered because of my reliance. Had that staff member made known that he was unable to properly apply handcuffs to a 'Four pointed' prisoner, another qualified staff member would have done so properly.

108. Mandatory restraint application directives in place at ADX, and in the entire BOP precluded and prohibited this vice-grip application of restraints. There is a rule made a part of officer-training and present in BOP texts and manuals requiring staff to ensure that a finger or two be able to fit in between a cuff and the wrist. This was not a discretionary directive.

110. Mandatory directives preclude use of the 'Discretionary Function Exemption.' Weiss v. United States, 787 F.2d 518, 23 (10th Cir. 1986); see generally Sledge v. United States, 883 F.Supp.2d 71 (D.D.C. 2012) (allowing discovery for BOP "institutional supplements, and post orders" to identify existence of directive overcoming the 'DFE').


Claim Six: Negligent Performance of US    Claim Eight:
Claim Seven: Failure To Consult of US    IIED OF US

111. Its 7-2-21 at about 2 am and I was just forcibly given an IV of water at medical's order.

112. I am in full black-box ambulatory restraints with shackles up against a wall as staff try to remove the restraints.

113. I refuse to come out as a form of protest, see supra ¶¶ 55-56.

114. I non-combatively resisted by moving my leg away from the officer who was trying to take the shackles off.

115. I also shout that I will refuse to come out of restraints so the camera will hear me.

116. Later I would receive another incident report for attempting to "kick" staff, but this, like the other, would be expunged and I would be found not-guilty. Cf. supra ¶¶ 39, 100 (other report expunged).

117. At no time did I ever become physically aggressive with staff.

118. Lt. Kamrad then 'Four points' me.

119. My left hand is cuffed contrary to directives & manuals, my hand is cuffed inward, toward the keyhole.

120. Moreover, my left arm is tightly constricted with a medical wrap used after the IV to hold the cotton in place, where the IV had been.

121. Staff did not remove the wrap to ensure circulation.

122. The failure to remove the wrap coupled with the misapplication of the same-side restraint caused immense burning sensations that felt like a raging fire all along my left forearm and hand. It was the kind of pain one takes morphine for, as they say. The pain, to a much lesser degree, existed in my left shoulder; though, this was just extreme soreness, not due to a lack of circulation but the akward position of the left hand.

123. This lasted for 7 hours without any intervention.

124. Lt. Kammrad refused at his 2-hour 'restraint check' "to do anything on my [his] first restraint check," despite my complaints.

125. Over the next two hours, the pain begins to increase and I periodically scream & try to move to get blood into my left arm.

126. In between the '2-hour checks,' staff doing the '15 minute checks' refuse to call medical to assist me.

127. Lt. Kammrad arrives for the second 2 hour check and again refuses to do anything.

128. By that point, my arm is discolored, it was light blue or purpleish.

129. Over the next two hours I shout & scream just as before.

130. Lt. Ingram arrives for the third 2 hour check & says he can't adjust anything and leaves.

131. The Health Services Administrator, Mrs. Fellows, hears me crying out and enters the cell with an officer.

132. I tell her that my arm is burning and my shoulder is becoming unbearable and that "something is wrong."

133. She says that she will, "call the Luitenant" and leaves.

134. She returns later and says, "he'll be back at 4pm."

135. Lt. Ingram returns at 4pm & has to pull my wrist out of the handcuff because it was so tight. He then correctly applies the handcuff. Also, he uses a pair of scissors to cut the medical wrap bringing immediate relief.

## LAW APPLIED

136. I incorporate the legal arguments above, here. See supra ¶¶ 50 (JIED), 104-110 (negligence, duty, special relationship).

137. Defendant violated 28 CFR § 552.22(b), "handcuffs may not be used...[a]s a form of punishing an inmate."

138. Defendant violated 28 CFR § 552.22(h)(3), "[handcuffs] may not be used [to cause] unnecessary physical pain..."

15

139. Staff violated 28 CFR § 552.24(d), "[S]taff shall check the inmate every fifteen minutes ... to ensure that the restraints are not hampering circulation."
140. The staff didn't even enter the cell to check my circulation every fifteen minutes, nor did they inform medical of my pain & circulation issues. The US is thus guilty of Failure to Refer/Consult.
141. Staff misapplied the restraint and the resultant pain causes liability against the U.S. under theories of IIED and/or Negligent Performance of Duty.
142. Staff was negligent in refusing to remove the medical wrap and is therefore liable under theories of Negligent Performance of Duty and/or IIED.

## EXHAUSTION

143. On 1-31-22, I submitted 2-SF95 claims to the BOP's North Central Regional Office grieving the above 'issue facts'.
144. On 5-24-22, tort #2022-02906 was denied, I don't know when it was mailed. The earliest the statutory 6-months window would close is 11-24-22.
145. On 6-6-22, tort #2022-02907 was denied. It was mailed on 6-14-22. The earliest that the 6 month window would close is 12-14-22.
146. I exhausted all remedies by these two administrative torts.
147. This complaint was placed in ADX's legal mail by handing it to a unit team member, via legal mail procedures, on 12-13-22, with appropriate postage & addressed to this Court.

16

### E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes _X_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): US, Munoz, Balsick, Craig, Starika, Fernandez, Melvin, Johnston, Williams

Docket number and court: 19-cv-01622-KMT (D.Colo.)

Claims raised: 8th amd.; Battery; IIED; Negligence

Disposition: (is the case still pending? has it been dismissed?; was relief granted?) Jointly Stipulated Dismissal

Reasons for dismissal, if dismissed: Private Settlement

Result on appeal, if appealed: N/A

### F. ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

_X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

_X_ Yes ___ No (*check one*)

### G. REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Monetary Relief
Damages

### H. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

12-13-22
(Date)

(Form Revised December 2017)

