IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03110-CNS-NRN

NASER ABDO,

Plaintiff,

v.

UNITED STATES OF AMERICA,
LT. KAMMRAD,
LT. INGRAM,
OFFICER BALSICK,
OFFICER QUEZADA,
BUREAU OF PRISONS, and
OFFICE OF LIEUTENANT OR CAPTAIN,

Defendants.

---

**ORDER ON
PLAINTIFF NASER ABDO'S FIRST MOTION TO COMPEL (ECF NO. 173)**[1]

---

Entered by Magistrate Judge N. Reid Neureiter

This matter is before the Court on Plaintiff Naser Abdo's First Motion to Compel, filed August 15, 2024, ECF No. 173. Defendant United States filed a response on August 26, 2024, ECF No. 179, and Plaintiff filed a reply on October 15, 2024, ECF No.

---

[1] Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written order stating the decision. Within fourteen (14) days after service of a copy of this Minute Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.* 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS,* 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").

1

205. The Court held a Status Conference addressing the subject motion on November 12, 2024. ECF No. 216.

**I.   Factual Background**

Plaintiff is a federal inmate at the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADMAX"). He seeks monetary relief from alleged mistreatment on two separate occasions by prison staff when he was engaged in a hunger strike in June and July 2021. *See generally* ECF No. 24 (Second Amended Complaint).

Certain of Plaintiff's claims survived Defendants' motion to dismiss and the case moved into discovery. The surviving claims are: Claim 1 (battery) and Claim 2 (intentional infliction of emotional distress), which arise from a June 25, 2021 use of force against Plaintiff after he resisted prison staff during a hunger strike medical exam; and Claim 14 (battery), which arises from a use of force against Plaintiff at approximately 6:00 p.m. on July 2, 2021, after he allegedly became combative toward prison staff who were attempting to transition him from four-point restraints to ambulatory restraints. *See generally* ECF No. 115.

Plaintiff asserts that he was on a hunger strike to protest prison conditions. Because his health was compromised, a "use of force" team was assembled to facilitate treatment. ECF No. 24 at 10. Plaintiff admits that he refused to be weighed – passively "sliding [his] legs from the scale." *Id*. at 8. Plaintiff says he was in full body restraints at all times and never attacked or kicked the staff. But, Plaintiff alleges that the staff was "incensed" by Plaintiff's refusal of medical care and used cuffs as weapons to cause him pain, "hog-tied" him, and caused nerve pain that lasted for weeks. *Id*. Later, on the forty-second day of his hunger strike, Plaintiff says that he was unnecessarily put in 4-point

2

restraints, with each limb chained to bars on the bed. *Id.* at 11–14. Plaintiff says these 4-point restraints were used to torture him, that he was left in these restraints for seven to eight hours, and there were no interventions to relieve his pain or respond to his pleas so as to "teach [him] a lesson." *Id.* at 11. Plaintiff says that even after he was transitioned to ambulatory restraints, staff continued to misapply restraints—intentionally targeting his injured wrist. *Id.*

## II. Plaintiff's First Motion to Compel

Plaintiff served Defendant with written discovery requests in March 2024. ECF Nos. 116 (Plaintiffs First Set of Production Requests), 117 (Plaintiff's First Set of Interrogatories). He served a second round of interrogatories in May 2024. ECF No. 138. Per Defense counsel, Defendant responded with written responses and produced over 1,000 pages of documents and several video files. *See* ECF Nos. 179-1 (Defendant's Second Supplemental Responses to Plaintiff's First Set of Production Requests), 179-2 (Defendant's First Supplemental Responses to Plaintiff's First Set of Interrogatories). Defendant also provided a privilege log. *See* ECF No. 179-3.

Plaintiff's First Motion to Compel challenges Defendant's responses to Requests for Production ("RFP") Nos. 3, 4, 6, and 8–14 and Interrogatory Nos. 1–4. See ECF No. 173. Plaintiff argues that Defendant acted improperly in (1) making objections to discovery requests; (2) withholding privileged documents; (3) objecting to productions as unduly burdensome; (4) denying Plaintiff access to available documents and information on the basis of relevance and proportionality; (5) narrowing the scope of its responses; and (6) failing to provide signature pages for its interrogatory responses. *See id.*

3

At the November 12, 2024 Status Conference, the Court denied Plaintiff's First Motion to Compel with respect to RFPs 6, 8, and 13. *See* ECF No. 216; *see also* Status Conference Recording at 2:55:25–3:02:12 (Nov.12, 2024). The Court further denied Plaintiff's request for incident reports written by certain officers pre-2018, which addressed Plaintiff's motion with respect to RFPs 4 and 11. *See* ECF No. 216; *see also* Status Conference Recording at 2:50:52–2:54:16.

Accordingly, currently before the Court are the portions of Plaintiff's First Motion to Compel addressing RFPs 3, 9, 10, 12, 14 and Interrogatory Nos. 1–4. Additionally, the Court reconsiders its order on Plaintiff's Motion to Compel with respect to RFP 8, as described below.

III. **Analysis**

   a. **RFP 3**

In RFP 3, Plaintiff seeks "documents and [electronically stored information ("ESI")] considered and/or generated by the [Bureau of Prisons ("BOP")] in disposing" of the two administrative tort claims related to this action. ECF No. 116 at 3. Plaintiff asks that the Court "overrule Defendant's general and conditional objections for lack of specificity and failure to produce a privilege log." ECF No. 173 at 12. He then asks for production of any withheld responsive documents, including those relating to any investigative documents, emails (especially those pertaining to the requests for reconsideration). *Id.* at 12–13. Plaintiff says that the Defendant is willing to produce only those documents relating to the initial denial, and not with respect to the appeals. *Id.*

In response, Defendant asserts that it has "located and produced responsive documents, including the tort claims, final denials, a request for reconsideration, and a denial of reconsideration, but informed Plaintiff that it withheld privileged material

4

pursuant to its objections." ECF No. 179 at 3. Defendant asserts that Plaintiff's First Motion to Compel should be denied with respect to RFP 3 for three reasons: First, the only documents that have been withheld are privileged documents; Defendant has searched for and produced documents relating to his appeals/requests for reconsideration. *Id.* at 4. There may be other reconsideration requests that Plaintiff says that he mailed to BOP, but BOP cannot locate them. *Id.* Second, the only responsive documents that Defendant has withheld are privileged documents that fall into one of two categories: (1) communications and attachments between BOP legal counsel and BOP staff regarding the investigation of Plaintiff's claims; and (2) printouts from BOP legal counsel's online case management system. *Id.* at 5. Defendant says that it has properly logged all withheld documents on its privilege log. *Id.*; ECF No. 179-3. Third, Defendant argues that Plaintiff has not shown that the Court may compel production of any privileged documents merely on the ground that a privilege log was not contemporaneously produced with its responses. *Id.* at 7. Here, Defendant argues that it responded timely to the discovery request noting that a privilege log would later be produced. *Id.* And, in fact, Defendant did produce a detailed log of withheld documents.

The Court finds that Defendant has properly responded to RFP 3. To the extent that responsive, non-privileged documents exist and have been located, they have been produced. The Court has reviewed Defendant's privilege log, ECF No. 179-3, and it provides all the information that is required, in that it allows for assessment as to whether the withheld documents are privileged by identifying the date, author, recipient, and general subject matter (or contents) of the document. There is no basis to compel

5

any further production in response to this request. Accordingly, Plaintiff's First Motion to Compel is DENIED with respect to RFP 3.

### b. Interrogatory No. 4

Interrogatory No. 4 asks Defendant to identify whether "there exists any written guidance or unwritten practice or custom . . . relating to the application of pressure or force on an inmate's neck." ECF No. 117 at 3. In response, Defendant stated objections (vague, ambiguous, overly broad, unduly burdensome), identified a section of a program statement containing written guidance on the use of restraints around an inmate's neck, and stated that neither the Correctional Services Manual nor the Correctional Services Procedures Manual contain information responsive to Interrogatory 4. ECF No. 179-2 at 8–10.

Plaintiff asks the Court to overrule Defendant's objection as to broadness "because the conduct of choking is at the heart of [Plaintiff's] battery claim," to compel Defendant to identify (a) "whether less than formal directives exist," and (b) "the existence of any [] prohibitive directives as to applying pressure to inmate's necks." ECF No. 173 at 24.

In response, Defendant states that it has not withheld any non-privileged information responsive to Interrogatory 4, and argues that Plaintiff has not identified any additional information responsive to Interrogatory 4 that Defendant could produce. ECF No. 179 at 11, 12. Defendant states that it interviewed BOP staff regarding this topic, has supplemented its response to reflect those conversations, and that there is no additional information to add. *Id.* at 13. Plaintiff has not provided the Court with any basis to question this representation, and the Court is persuaded by Defendant's argument. No additional response from the Defendant will be required.

6

### c. RFPs 5 and 8

Although the Court already issued a ruling on RFP, it reconsiders its ruling to the extent described below. The Court also considers RFP 5, which is closely related.

In RFP 5, Plaintiff seeks production of "stationary camera footage for C-Unit, C-Lower, at the ADX for the hours from 4pm through 3pm" on June 25, 2021. ECF No. 116 at 4. In response, Defendant states that it was "informed by BOP staff that, pursuant to the BOP's retention policy for stationary camera footage, that camera footage was not retained and is no longer available." ECF No. 179-1 at 11.

In RFP 8, Plaintiff seeks documents and ESI about ADX's stationary camera systems, including the different types of video preservation, the durations for which video footage may be preserved or accessed, and the process by which video is preserved. ECF No. 116 at 4. Rather than providing documents, Defendant provided a detailed explanation of the process for the preservation of stationary footage:

> The BOP retains stationary camera footage captured at the ADX for 30 days. After 30 days, stationary camera footage is no longer routinely retained because of space and data storage limitations. After the 30-day retention period, footage is recorded over.
>
> If prison staff receive a request to retain stationary camera footage, and the standard 30-day retention period has not expired, communications staff will review the relevant footage and assess whether the stationary footage supports the retention request. If the stationary footage does not depict conduct or events supporting the retention request, the footage is not retained beyond the standard 30-day retention period.
>
> These rules are different from the rules for staff-operated video camera footage that may be obtained for a calculated use of force, where there is a delay before the force is to be used. *See* BOP Program Statement 5566.06, Use of Force and Application of Restraints 19 (Aug. 29, 2014). "Calculated uses of force shall be videotaped following the sequential guidelines presented in the Correctional Services Manual." *Id*. The Captain must maintain footage from staff-operated video cameras used to record a use of force incident for a minimum of 2.5 years. *Id.* at 20.

7

ECF No. 179-1 at 15–16. Defendant later supplemented its response to RFP 8 as follows:

> If prison staff receive a request to retain stationary camera footage, and the standard 30-day retention period has not expired, <u>Special Investigative Services (*not* communications staff, as stated in the first supplemental response</u>) will review the relevant stationary camera footage and assess whether the footage supports the retention request. If the footage does not depict conduct or events supporting the retention request, the footage is not retained beyond the standard 30-day retention period.

*Id.* at 16–17. This appears to be a comprehensive response to RFP 8. It does not require additional supplementation, except to the extent there is no explanation of why the stationary camera footage described in RFP 5 was not retained. Accordingly, Defendant should supplement its response to RFP 8 and provide an explanation as to why the stationary camera footage described in RFP 5 was not retained.

### d. RFPs 9, 10, and 12

In these RFPs, Plaintiff requests documents and ESI not solely related to the 6:00 p.m. use of force on July 2, 2021, but also other events occurring that day, including Plaintiff's hunger strike, medical assessments, restraint checks, and any misconduct by Plaintiff or staff during those events. ECF No. 116 at 5, 6. By example, RFP 9 states:

> Please provide all documents and ESI, except metadata, generated by the BOP related to; (A) plaintiff's hunger strike; (B) plaintiff's medical assessments; (C) plaintiff's restraint checks; and (D) any uses of force executed against plaintiff, where the documents or ESI was generated at the ADX on 7-2-21 from 5 am thru 8 pm or was generated based on incidents that occurred within that timeframe.

ECF No. 116 at 5.

Defendant objected to these RFPs in part because the only surviving claim in the case relating to events of July 2, 2021 is Claim 14 (battery), arising from the use of force

8

at 6:00 pm. ECF No. 179-1 at 18, 21, 26. Therefore, in Defendant's view, the request for *all documents* relating to the hunger strike, medical assessment, restraint checks, and other uses of force is overbroad and calls for the production of documents that are not relevant. *Id.*

Notwithstanding this objection and others, Defendant produced numerous documents in response to these requests, including a Psychology Services Restraint Review Form; Fifteen Minute Restraints Check Form; Two-Hour Lieutenant Restraints Check Form; Staff Injury Assessment and Follow up; Daily Assignment Roster; Hunger Strike Daily Update; Staff Memoranda; SENTRY Inmate Profile; 7/2/21 18:35 BEMR Clinical Encounter; Behavior Management Plan 48 Hour Restraint Review; and Health Services Restraint Review Form. ECF No. 179-1 at 19. Defendant has also produced the handheld camera footage for the use of force at approximately 6:00 p.m. on July 2, 2021. *Id.* Additionally, various emails related to the use of force were also produced. *Id.* at 19–20. Defendant has also produced the Office of Internal Affairs investigation from the 6:00 p.m. use of force. In Defendant's view, there are no other responsive, relevant documents to produce, although Defendant has agreed to re-review video of the two-hour restraint checks at 8:00 p.m. and 10:00 p.m. on July 2, 2021, to consider them for production. *See* ECF No. 179 at 15 n.4.

Defendant does concede that it has withheld from production documents and emails regarding the use of force the morning of July 2, but it argues this material is not relevant to the 6:00 p.m. use of force. *Id.* at 15. This is because to succeed on the remaining claim of battery, Plaintiff must show that the officers intended to cause Plaintiff harmful or offensive physical contact and that harmful or offensive physical

9

contact did occur. *Id.* In Defendant's view, the conduct of officers during a different interaction with Plaintiff on the same day does not make it more or less likely that officers involved in the 6:00 p.m. use of force acted with the requisite intent. ECF No. 179 at 15–16.

The Court agrees in part with Defendant's relevance objections. To the extent that other officers (different from those who were involved in the 6:00 p.m. use of force) were involved in prior uses of force, the Court does not find the prior uses of force relevant to the remaining claim of battery that alleged occurred at 6:00 p.m. However, to the extent that prior uses of force or interactions with Plaintiff involved the <u>same</u> officers who are being accused of the 6:00 p.m. incident, the Court finds such documents are potentially relevant, because documents relating to the prior incidents may shed light on the subjective intent of the officers who were involved at 6:00 p.m.

Therefore, the Court will GRANT IN PART Plaintiff's First Motion to Compel with respect to RFPs 9, 10, and 12, OVERRULE IN PART Defendant's relevance objection to these RFPs, and require Defendant to supplement the production in response to these RFPs with documents or emails relating to uses of force from earlier in the day only to the extent that those uses of force involved the same officers who were involved in the July 2, 2021 6:00 p.m. use of force. If the various incidents involved different officers from those who were involved at 6:00 p.m., no supplementation will be required.

In addition, with respect to RFP 9, Plaintiff requests a "narrative account of what happened to the footage from the two [stationary] cell cameras." ECF No. 173 at 17. The Court concurs that Plaintiff is entitled to an explanation of why footage from the cell cameras is not available and has not been produced. Therefore, Defendant will be

10

required to supplement this response with such an explanation. The explanation may be as simple as the fact that there was no timely request for preservation of that camera footage and it was destroyed or over-written based on the normal protocols. But Plaintiff is entitled to some explanation.

### e. RFP 14 and Interrogatories 1–3

As for RFP 14, Defendant has requested that the BOP search for requested records, and the Defendant has agreed to supplement the response to RFP 14 as appropriate. Regarding Interrogatories 1–3, Plaintiff argues that the signature pages for Defendant's interrogatory responses do not state the signatories provided their answers under penalty of perjury. In response, Defendant stated that it would provide corrected signature pages. Therefore, no ruling is required on these issues at this time.

## IV. Conclusion

For the foregoing reasons, Plaintiff's First Motion to Compel (ECF No. 173) is DENIED IN PART and GRANTED IN PART, as described above. Defendant shall supplement its response to RFP 8 and provide an explanation as to why the stationary camera footage described in RFP 5 was not retained. Defendant shall be required to produce documents and emails relating to the uses of force and other events on July 2, 2021 besides the 6:00 p.m. use of force, only to the extent that these events involved the same officers who were involved in the 6:00 p.m. use of force. Plaintiff's motion is otherwise denied.

Dated at Denver, Colorado this 10th day of February, 2025

_____
N. Reid Neureiter
United States Magistrate Judge